IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DONALD LEE HINTON,**

Petitioner,

v.  Civil Action No. 3:12CV136

**HAROLD CLARKE,**

Respondent.

## MEMORANDUM OPINION

Donald Lee Hinton, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). Respondent moves to dismiss, *inter alia*, on the ground that the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Hinton has responded. The matter is ripe for disposition.

### I.   PROCEDURAL HISTORY

#### A.   State Proceedings

##### 1.   Conviction and *Pro se* Motions for Reconsideration

The Circuit Court of Fairfax County, Virginia ("Circuit Court") entered final judgment convicting Hinton of one count of aggravated maiming and one count of child neglect on April 16, 2009. *Commonwealth v. Hinton*, No. FE-2008-1758, at 1-2 (Va. Cir. Ct. Apr. 16, 2009). Hinton filed no appeal.

On August 8, 2009, Hinton filed a letter that the Circuit Court construed as a motion for reconsideration of his imposed sentence.[1] The Circuit Court denied the motion on August 18, 2009. *Commonwealth v. Hinton*, No. FE-2008-1758 (Va. Cir. Ct. Aug. 18, 2009).

---

[1] Generally, a circuit court in Virginia loses jurisdiction over a sentence twenty-one days after it enters judgment. *See Neely v. Commonwealth*, 604 S.E.2d 733, 734 (Va. Ct. App. 2004)

On November 19, 2009, Hinton again wrote a letter asking the Court to consider reducing his sentence. The Circuit Court denied the letter by an undated margin order.

On February 19, 2010, Hinton filed a motion for appointment of new counsel and a motion to set aside sentencing. On February 23, 2010, the Circuit Court mailed a letter to Hinton notifying him that it would take no further action on his *ex parte* communication. The Circuit Court stapled the originals of Hinton's November 19, 2009 letter and February 19, 2010 letter to the letter it sent to Hinton and maintained a copy in the Circuit Court's file.

### 2. Clarification of Sentence

On November 3, 2009, the Department of Corrections Offender Management Services wrote to the Circuit Court noting that a "corrected court order/jail credit is needed" because "[s]ubject can not [sic] be sentenced to less than 6mos of PRS [post-release supervision]." Letter 1, *Commonwealth v. Hinton*, No. FE–2008–1758 (Va. Cir. Ct. filed Nov. 3, 2009).

On December 11, 2009, Hinton and his counsel appeared before the Circuit Court in order to clarify Hinton's post-release supervision period. *See Commonwealth v. Hinton*, No. FE–2008–1758, at 1 (Va. Cir. Ct. Dec. 28, 2009). On December 28, 2009, the Circuit Court entered an order clarifying that Hinton's post-release supervision period was six months. *Id.*

### 3. First State Habeas Petition

On June 14, 2010, Hinton filed a petition for a writ of habeas corpus in the Circuit Court. Petition for a Writ of Habeas Corpus 1, *Hinton v. Commonwealth*, No. CL–2010–8473 (Va.

---

(quoting Va. Sup. Ct. R. 1:1). Section 19.2–303 of the Virginia Code, however, permits a Circuit Court to modify or suspend any portion of the unserved sentence "'at any time before the person is transferred to the [Virginia] Department [of Corrections].'" *Id.* (quoting Va. Code Ann. §19.2–303). It appears Hinton remained housed in the Fairfax County Adult Detention Center until September of 2010. On September 22, 2010, Hinton's sister informed the Circuit Court that Hinton's address changed to Pocahontas Correctional Facility.

Cir. Ct. filed June 14, 2010). On November 12, 2010, the Circuit Court dismissed the petition. *Hinton v. Commonwealth*, No. CL-2010-8473, at 1 (Va. Cir. Ct. Nov. 12, 2010). On January 18, 2011, Hinton filed a notice of appeal of the Circuit Court's dismissal, however, he failed to file a petition for appeal.[2]

### 4. Second State Habeas Petition

On October 12, 2011, Hinton filed a second petition for a writ of habeas corpus in the Supreme Court of Virginia. Petition for Writ of Habeas Corpus 1, *Hinton v. Warden, Pocahontas State Corr. Ctr.*, No. 111804 (Va. filed Oct. 12, 2011). On November 14, 2011, the Supreme Court of Virginia dismissed his petition, finding it untimely and successive pursuant to sections 8.01–654(A)(2)[3] and 8.01–654(B)(2)[4] of the Virginia Code. *Hinton v. Warden, Pocahontas State Corr. Ctr.*, No. 111804, at 1 (Va. Nov. 14, 2011). The Supreme Court of Virginia subsequently denied Hinton's petition for rehearing. *Hinton v. Warden, Pocahontas State Corr. Ctr.*, No. 111804, at 1 (Va. Jan. 19, 2012).

---

[2] From Hinton's pleadings, it appears that Hinton failed to pursue the appeal because he believed it was "TOO LATE." Petition for Writ of Habeas Corpus ¶ 11, *Hinton v. Warden, Pocahontas State Corr. Ctr., et al.*, No. 111804 (Va. filed Oct. 12, 2011). The Supreme Court of Virginia also has no record of a petition for appeal.

[3] This section states, in pertinent part:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01–654(A)(2) (West 2011).

[4] This section states, in pertinent part: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01–654(B)(2) (West 2011).

B.  **Federal Habeas Petition**

On February 14, 2012, Hinton filed the present 28 U.S.C. § 2254 Petition in this Court. (§ 2254 Pet. 16.)[5] In his § 2254 Petition, Hinton contends:

Claim One: Counsel rendered ineffective assistance when she failed to file an appeal of Hinton's convictions and sentences.

## II.  ANALYSIS

### A. Statute of Limitations

Respondent contends that the federal statute of limitations bars Hinton's claim. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

1.  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

    (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[5] The Court deems the § 2254 petition filed on the date Hinton swears he placed the petition in the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

4

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### B. Commencement of the Statute of Limitations Under 28 U.S.C. § 2244(d)(1)(A)

Hinton's judgment became final on Monday, May 18, 2009,[6] when the time to file a notice of appeal expired. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); *see* Va. Sup. Ct. R. 5A:6(a) ("No appeal shall be allowed unless, within 30 days after entry of final judgment . . . counsel files with the clerk of the trial court a notice of appeal . . . ."). Accordingly, Hinton had one year, or until May 18, 2010 to file a petition pursuant to 28 U.S.C. § 2254. Hinton filed this § 2254 Petition on February 14, 2012.

### C. Belated Commencement of the Limitations Period

The Court construes Hinton to argue entitlement to a belated commencement under § 2244(d)(1)(D) because he instructed counsel to file an appeal and he first learned that counsel failed to file an appeal on February 22, 2010. (Resp. Mot. Dismiss (ECF No. 15) Ex. A;

---

[6] The Circuit Court's decision to clarify the terms of Hinton's supervision in December 2009 fails to alter the date at which Hinton's criminal judgment became final for the purposes of 28 U.S.C. § 2244(d)(1)(A). *See Speller v. Johnson*, No. 3:09CV463, 2012 WL 1038624, at *9 n.21 (E.D. Va. Mar. 27, 2012) (citing cases for the proposition that correcting clerical errors and making alterations to a defendant's sentence short of resentencing does not alter the date finality attaches for AEDPA's statute of limitations). Nevertheless, as discussed below, Hinton's request for the Circuit Court to reconsider his sentence warrants statutory tolling. *See* 28 U.S.C. § 2244(d)(2).

5

Addendum Resp. Mot Dismiss (ECF No. 17) 1.) Thus, Hinton argues that the limitations period should commence on the day that he discovered counsel filed no appeal. "A 1-year period of limitation shall apply to an application for a writ of habeas corpus . . . ." 28 U.S.C. § 2244(d)(1). "The limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

Whether a petitioner has exercised due diligence is a fact-specific inquiry unique to each case. *Wims v. United States*, 225 F.3d 186, 190–91 (2d Cir. 2000). A petitioner bears the burden to prove that he or she exercised due diligence. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006). "'Due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002)). Due diligence, however, "at least require[s] that a prisoner make *reasonable* efforts to discover the facts supporting his claims." *Id.* (citing *Aron*, 291 F.3d at 712). Moreover, in evaluating a petitioner's diligence, the Court must be mindful that the "statute's clear policy calls for promptness." *Johnson v. United States*, 544 U.S. 295, 311 (2005).

Once Hinton requested that counsel file an appeal, it was incumbent upon him to demonstrate that he diligently followed up with his attorney regarding the status of that appeal. *See El-Abdu'llah v. Dir., Va. Dep't Corr.*, No. 3:07CV494, 2008 WL 2329714, at *2–3 (E.D. Va. June 4, 2008). "[W]hen counsel's communications or lack thereof indicate that something is amiss with a petitioner's appeal, due diligence requires the petitioner to act on that information." *Id.* at *2 (citations omitted). Hinton states that he told his counsel he wanted to file an appeal "at

[the] close of trial." (§ 2254 Pet. 15.) Hinton fails to state whether counsel acknowledged or responded to his request to appeal. Moreover, Hinton made no attempt to inquire about the appeal in the following months. The record demonstrates that Hinton saw counsel again on December 11, 2009, when both appeared before the Circuit Court for a hearing to clarify Hinton's supervision dates. Hinton provides no indication that he asked counsel about his appeal or received any assurance from counsel that counsel noted an appeal.

Moreover, counsel's failure to timely pursue an appeal was discoverable as of May 18, 2009, when it became a part of the public record. *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003); *see Green v. Johnson*, 515 F.3d 290, 305 (4th Cir. 2008). Although Hinton possessed the ability to discover his counsel's failure to appeal by May 18, 2009, "to require that he do so ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal." *Granger v. Hurt*, 90 F. App'x 97, 100 (6th Cir. 2004) (citing *Wims*, 225 F.3d at 190 n.4). While no "magic number" exists for the time afforded a reasonable prisoner to discover counsel failed to file a promised appeal, a petitioner must offer some evidence that he acted with due diligence. *Ryan v. United States*, 657 F.3d 604, 607–08 (7th Cir. 2011) (citing cases and finding that "a reasonable prisoner may take at least two months . . . to suspect that counsel has dropped the ball, contact counsel or the court, wait for a response, and verify the suspicion"); *Granger*, 90 F. App'x at 100 (finding petitioner acted with due diligence when he waited two months to inquire about requested appeal). Nevertheless, given counsel's apparent silence and lack of communication about Hinton's appeal, due diligence required Hinton to follow up with counsel or the Circuit Court at the latest on December 11, 2009, when Hinton and counsel

appeared in the Circuit Court together. Thus, with minimal due diligence, Hinton could have discovered counsel failed to file an appeal by that date.

D.     **Statutory Tolling**

To qualify for statutory tolling, an action must be a (1) properly filed (2) post-conviction or other collateral review of (3) the pertinent judgment. 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). These rules and laws "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (footnote omitted) (citing cases). A petition denied by a state court as untimely fails to qualify as "properly filed" within the meaning of the AEDPA. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Although the limitations period would have commenced on December 12, 2009, the Court construes Hinton's November 19, 2009 letter and the two motions filed on February 19, 2010 to further toll the limitations period. While the date of the Circuit Court's denial of Hinton's November 19, 2009 letter lacks clarity, the Circuit Court stapled the November 19, 2009 letter and the February 19, 2010 motions to a letter it sent to Hinton dated February 23, 2010. Assuming without deciding that Hinton "properly filed" the November 19, 2009 letter and February 19, 2010 motions, at the very latest, both filings were no longer pending as of February 23, 2010, when the Court notified Hinton by letter that it would take no action on his submissions. Therefore, the limitations period began to run the following day, February 24,

2010, and ran until Hinton filed his first state habeas petition on June 14, 2010, a period of one-hundred and ten (110) days.

The limitations period remained tolled until the Circuit Court dismissed Hinton's first state habeas petition on November 12, 2010. Hinton filed a notice of appeal of the Circuit Court's dismissal, however, he failed to file a petition for appeal. Thus, he lacks entitlement to tolling for the pendency of the unperfected appeal. *See Escalante v. Watson*, No. 10–7240, 2012 WL 2914239, at *6 (4th Cir. July 18, 2012) (refusing to toll limitation period for the time period where the inmate's defective petition for appeal was pending before the Supreme Court of Virginia). Although Hinton later pursued an untimely second petition for a writ of habeas corpus in the Supreme Court of Virginia, the time that Hinton's petition was pending fails to further toll the limitation period. *See Pace*, 544 U.S. at 417.

Thus, the limitation period began to run again upon the dismissal of Hinton's first state habeas petition on November 12, 2010, and the deadline for filing a § 2254 Petition expired July 25, 2011. Hinton failed to file his present § 2254 Petition until February 14, 2012. Therefore, the statute of limitations bars the action even with the benefit of the belated commencement date.

E.  **Equitable Tolling**

Petitions pursuant to 28 U.S.C. § 2254 are subject to equitable tolling. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace*, 544 U.S. at 418). An inmate asserting equitable tolling "'bears a strong burden to show specific facts'" that demonstrate he fulfills both elements of the test. *Yang v.*

*Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). Hinton fails to meet this exacting standard.

Hinton argues that he "has very limited education, serious mental problems as well as serious physical problems, which have limited his understanding of the legal process." (Addendum Resp. Mot. Dismiss 1.) Hinton also explains that on June 30, 2011, he suffered a "massive stroke and was treated at VCU Hospital." (§ 2254 Pet. 15.)

### 1. General Allegations of Incapacity

Only in instances of "profound mental incapacity" will the Court apply equitable tolling. *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004) (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998)). Moreover, to prove entitlement to equitable tolling, Hinton "'must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected [his] ability to file a timely habeas petition.'" *Robison v. Hinkle*, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009) (alteration in original) (quoting *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008)). Here, Hinton's general assertion that he suffers from "serious mental problems" (Addendum Resp. Mot. Dismiss 1), fails to demonstrate his incompetency. *Id.* & n.13 (citing cases for the proposition that "a bare assertion that a petitioner suffers from some mental impairment, 'without more, is insufficient to justify equitable tolling'" (quoting *Lawrence v. Florida*, 421 F.3d 1221, 1227 (11th Cir. 2005))).[7]

Furthermore, even if the record contained evidence to support Hinton's argument he suffered from mental and physical infirmities, Hinton fails to demonstrate a causal connection between his infirmities and his ability to file timely a federal habeas petition prior to his stroke

---

[7] Additionally, Hinton's purported ignorance of the law and limited education fail to qualify as extraordinary circumstances. *Sosa*, 364 F.3d at 512 (citing cases).

on June 30, 2011. *McSwain*, 287 F. App'x at 457. During 2010 and early 2011, Hinton filed a state habeas petition in the Circuit Court, filed a motion for transcripts in the Circuit Court on February 11, 2011, and filed a Motion to Amend Judgment in the Supreme Court of Virginia in May 2011.[8] Hinton's pleadings from the relevant time period reflect Hinton's ability to pursue his rights in litigation and belie his claims of incapacity. Given this record, Hinton fails to meet his burden of demonstrating that his severe mental illness prevented him from filing a timely § 2254 Petition. *See id.* (citing *Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005); *Price v. Lewis*, 119 F. App'x 725, 726–27 (6th Cir. 2005)); *Robison*, 610 F. Supp. 2d at 540 & n.16 (citing cases for the proposition that "where a petitioner has filed other pleadings during the alleged period of incompetency, courts are often unwilling to find equitable tolling appropriate"). Hinton fails to demonstrate a causal connection between any infirmities prior to June 30, 2011 and the tardiness of his § 2254 Petition. Accordingly, Hinton lacks entitlement to equitable tolling based upon his mental deficiency.

### 2. Hinton's Stroke

Hinton also blames his tardy filing on a stroke he suffered on June 30, 2011. By June 30, 2011, three-hundred and thirty-nine (339) days of the limitation period had expired. Assuming Hinton's stroke qualifies as an extraordinary circumstance for equitable tolling purposes, Hinton must demonstrate that he diligently attempted to file his § 2254 Petition after he recovered. *See Eaton v. Clarke*, No. 3:11CV834, 2012 WL 4344195, at *6 (E.D. Va. Sept. 2012). Here, Hinton pursued state litigation within several months of his stroke, thereby demonstrating his renewed ability to pursue his rights in litigation. *See id.*; *McSwain*, 287 F. App'x at 457; *Robison*, 610 F.

---

[8] While the record before the Court lacks Hinton's letter, the Supreme Court of Virginia noted in its May 27, 2011 letter that Hinton asked permission to file a second petition for a writ of habeas corpus, and the Supreme Court explained that Hinton need not seek permission.

Supp. 2d at 540 & n.16 (citing cases). On September 6, 2011, Hinton sought files from counsel and on September 13, 2011, Hinton filed a motion for transcripts in the Circuit Court. On October 12, 2011, Hinton filed his second state petition for habeas corpus in the Supreme Court of Virginia. Hinton's state filings demonstrate that as of September 2011, he possessed the ability to pursue his rights in litigation, yet, he failed to diligently pursue his rights in the federal court.

After his recovery, Hinton had twenty-six (26) days remaining of the federal limitations period. Nevertheless, Hinton waited four months after he filed his second successive state habeas petition to file his § 2254 Petition. This four-month delay demonstrates a lack of diligence in pursuing his federal rights after his recovery. Because Hinton failed to exercise reasonable diligence in pursuing his § 2254 Petition after any extraordinary circumstances concluded, "the link of causation between the extraordinary circumstances and the failure to file [was] broken." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Thus, Hinton cannot show that his illness prevented him from timely filing his § 2254 Petition.

### III. CONCLUSION

Accordingly, Respondent's Motion to Dismiss (ECF No. 10) will be GRANTED. The § 2254 Petition will be DENIED and the action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Hinton is entitled to further consideration in this matter. A certificate of appealability will therefore be DENIED.

An appropriate Final Order shall issue.

Date: 2/20/13
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge